**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MELVIN Y. SHIBUYA,
               Appellant,

      v.

DEPARTMENT OF AGRICULTURE,
               Agency.

DOCKET NUMBERS
DE-1221-09-0295-B-1
DE-1221-10-0390-B-1
DE-0752-11-0097-B-1

DATE: March 31, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David S. Handsher</u>, Esquire, San Francisco, California, for the appellant.

<u>Deryn Sumner</u>, Esquire, and <u>Gary M. Gilbert</u>, Esquire, Silver Spring, Maryland, for the agency.

<u>Inga Bumbary-Langston</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the remand initial decision, which reversed the appellant's demotion and granted his request for corrective action in his individual right of action (IRA) appeals. For the reasons discussed

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

below, we DENY the agency's petition for review. Except as expressly MODIFIED by this Final Order to find that the Chief Financial Officer (CFO) was not similarly situated to the appellant, we AFFIRM the remand initial decision in these joined appeals.

## BACKGROUND

¶2 The instant petition for review is before us following a Board‑ordered remand of the appellant's joined appeals. *See Shibuya v. Department of Agriculture*, [119 M.S.P.R. 537](#), ¶ 38 (2013). The following essential facts are undisputed.

¶3 The appellant was employed as a GS‑14 Branch Chief of Employee Relations at the U.S. Forest Service, a subpart of the U.S. Department of Agriculture. *Id.*, ¶ 4. In April 2008, the appellant disclosed to the Office of Special Counsel (OSC) that the CFO of the Forest Service misused, and was delinquent in paying, his Government credit card and that the agency had failed to take any action on the matter.[2] *Id.*, ¶ 2. In November 2008, the appellant told an agency manager about his disclosure to OSC regarding the CFO's misconduct. *Id.*, ¶ 24. In December 2008, the agency began investigating the appellant for alleged misconduct concerning his advice to agency officials to destroy emails that he believed were potentially discoverable in future litigation. *Id.*, ¶ 2. While the investigation was pending, the agency relocated his office and changed his duties. *Id.*, ¶¶ 2, 10. As a result of these actions, the appellant filed his first IRA

---

[2] Ultimately, OSC referred the appellant's allegations about the CFO to the Office of the Secretary of Agriculture, which referred the allegations to the Office of the Inspector General (OIG). *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-W-2, Appeal File (0295 W-2 AF), Tab 18, Subtab B at 6. On August 12, 2009, OIG issued a report of investigation that substantiated the appellant's allegations and criticized the agency and the Forest Service for the delay in removing the CFO and for awarding him a $13,000 performance award in December 2008 and a salary increase in 2009, when they knew that the Office of Human Capital Management was proposing the CFO's removal. 0295 W-2 AF, Tab 18, Subtab B.

appeal alleging that the agency removed his supervisory duties, investigated him for misconduct, and moved him to a different office in retaliation for his disclosure to OSC regarding the CFO's misconduct. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-W-1, Initial Appeal File (0295 IAF), Tab 1; *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-W-2, Appeal File (0295 W-2 AF), Tab 18, Subtab B at 40, 75.[3]

¶4      On December 16, 2009, as a result of the aforementioned investigation, the agency proposed to demote the appellant from a GS‑14 Branch Chief of Employee Relations to a GS‑13 Human Resource Liaison on the basis of the following two charges:    (1) poor judgment—soliciting the unauthorized destruction of Government records when, in emails dated June 29, August 12, and September 26, 2007, and September 24, 2008, the appellant advised employees to destroy emails that he believed were discoverable in future third‑party proceedings; and (2) poor judgment—conduct unbecoming a Federal employee, alleging that he engaged an outside attorney contractor to "launder" case analyses drafted by agency employees to create the appearance that the analyses were subject to attorney-client or work-product privileges, thereby protecting the analyses from disclosure in third-party proceedings. *Shibuya*, 119 M.S.P.R. 537, ¶ 4.   The appellant then filed a second IRA appeal alleging that the agency proposed to demote him in retaliation for his disclosure regarding the CFO. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-10-0390-W-1, Initial Appeal File, Tab 1.

¶5      On May 11, 2010, the agency informed the appellant that his demotion would become effective on June 6, 2010. *Shibuya*, 119 M.S.P.R. 537, ¶ 5.   He appealed the demotion to the Board under chapter 75, raising an affirmative

---

[3] At the appellant's request, the administrative judge dismissed the appellant's first IRA appeal without prejudice pending completion of an agency investigation. 0295 IAF, Tab 13.  The appeal was refiled in May 2010.  0295 W‑2 AF, Tab 1.

defense of whistleblower reprisal. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE‑0752‑11‑0097‑I‑1, Initial Appeal File, Tab 1.

¶6　　The administrative judge joined the chapter 75 appeal with the two IRA appeals. 0295 W-2 AF, Tab 11. After holding the requested hearing, she issued an initial decision reversing the demotion on the ground that the agency failed to prove either charge, and granting corrective action in the IRA appeals. 0295 W-2 AF, Tab 37, Initial Decision (ID). The agency filed a petition for review of the initial decision. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-W-2, Petition for Review File, Tab 1.

¶7　　In an Opinion and Order, the Board vacated the initial decision and remanded the matter for further adjudication. *Shibuya*, [119 M.S.P.R. 537](#), ¶ 38. Regarding the chapter 75 appeal, the Board found that the administrative judge erred in finding that the agency failed to prove the charges underlying the demotion and instead sustained both charges. *Id.*, ¶¶ 10-17. The Board thus ordered the administrative judge to determine in the first instance on remand whether the agency established a nexus between the charges and the efficiency of the service and the reasonableness of the penalty. *Id.*, ¶¶ 18, 38.

¶8　　As to the appellant's whistleblower reprisal affirmative defense, the Board affirmed the administrative judge's findings that the appellant made a protected disclosure when he informed OSC of the CFO's Government credit card abuse and that the protected disclosure was a contributing factor in the agency's decision to demote him. *Id.*, ¶¶ 21, 23‑24. The Board further affirmed the administrative judge's findings in the joined IRA appeals that the appellant's protected disclosure was a contributing factor in the agency's decision to significantly change his duties, to relocate his office, and to propose his demotion.[4] *Id.*, ¶¶ 27, 30. Because the administrative judge originally found that

---

[4] The Board found that it was appropriate to consider the evidence regarding the agency's investigation into the appellant's alleged misconduct in analyzing whether the agency demoted him in reprisal for his whistleblowing, but did not affirm the

the agency's failure to prove the charges underlying the demotion undermined the strength of its evidence in support of its actions, the Board ordered the administrative judge to reweigh the evidence in light of the sustained charges and to determine whether the agency established by clear and convincing evidence[5] that it would have taken the same actions in the absence of the appellant's protected disclosure. *Id.*, ¶¶ 36-38.

¶9      On remand, the administrative judge found that the agency established a nexus between the appellant's misconduct and the efficiency of the service and that the penalty of a demotion was within the tolerable limits of reasonableness for the sustained charges. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-B-1, Remand File, Tab 18, Remand Initial Decision (RID) at 5.  However, in considering the appellant's affirmative defense, she concluded that the agency failed to establish by clear and convincing evidence that it would have demoted the appellant in the absence of his protected disclosure and, therefore, reversed the demotion.  RID at 9.  Concerning the appellant's IRA appeals, the administrative judge found that the agency failed to show by clear and convincing evidence that it would have removed the appellant's supervisory duties, investigated him, relocated his office, and proposed his demotion in the absence of his protected disclosure.  *Id*.  Therefore, the administrative judge granted his request for corrective action.  RID at 10.

¶10     The agency has filed a petition for review of the remand initial decision, and the appellant has responded in opposition to the agency's petition for review. *Shibuya v. Department of Agriculture*, MSPB Docket No. DE-1221-09-0295-B-1, Remand Petition for Review (RPFR) File, Tabs 1, 3.

---

administrative judge's finding that the investigation itself was a covered personnel action under 5 U.S.C. § 2302(a)(2)(A). *Shibuya*, 119 M.S.P.R. 537, ¶ 22 n.12.

[5] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

## DISCUSSION OF ARGUMENTS ON REVIEW[6]

¶11     On review, the parties do not challenge the administrative judge's findings that the agency established a nexus between the charge and the efficiency of the service and the reasonableness of the penalty for the sustained charges. RPFR File, Tabs 1, 3. Furthermore, the parties do not challenge the administrative judge's finding that the agency failed to show by clear and convincing evidence that it would have changed the appellant's duties, moved his office, and proposed his demotion absent his protected disclosure. *Id.* We have reviewed the record and discern no basis to disturb these findings. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105‑06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility). Therefore, the only issue on review concerns the appellant's affirmative defense of whistleblower reprisal; specifically, whether the administrative judge correctly determined that the agency failed to show by clear and convincing evidence that it would have demoted the appellant in the absence of his protected disclosure.

¶12     In an adverse action appeal, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 11 (2016). In such appeals, once the agency proves its adverse action case by a preponderance of the evidence,[7] the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Id.*; 5 C.F.R. § 1201.56(b)(2)(i)(C). When, as here, the appellant makes such a showing, the

---

[6] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[7] Preponderance of the evidence is defined by regulation as that degree of relevant evidence which a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

Board will order corrective action unless the agency shows by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing. 5 U.S.C. § 1221(e)(2); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 28 (2013).

¶13     In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). The Board must consider all of the evidence, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

The administrative judge properly determined that the strength of the agency's evidence in support of the demotion was undermined by its response once it learned of the appellant's misconduct, and its handling of the disciplinary action.

¶14     As to the first *Carr* factor, in the remand initial decision, the administrative judge found that the agency's response once it learned of the appellant's alleged misconduct undermined the strength of its evidence in support of the demotion. RID at 6-7. In so finding, she relied on the following findings of fact from the earlier initial decision, which the Board affirmed in the prior Opinion and Order:

> The proposing official never reviewed the evidentiary package supporting the proposed demotion; the proposing official failed to order a customary case analysis for the matter; the individual

> advising the proposing official rejected a case analysis by the servicing personnel office that recommended a 30-day suspension without even discussing it with the proposing official; the deciding official lacked understanding of the evidence supporting the demotion action; and the appellant remained responsible for leading and providing advice and policy in the position to which he was demoted even though the agency's proffered reason for the demotion was to take such responsibilities away from him.

RID at 6-7; *Shibuya*, 119 M.S.P.R. 537, ¶¶ 33, 36; ID at 38-42. The administrative judge concluded that these actions suggested a "rush to judgment." RID at 6-7.

¶15 On review, the agency argues that the administrative judge erred in finding that the deciding official did not have any familiarity with the evidentiary record and that the agency's actions once it learned of the appellant's misconduct suggested a "rush to judgment." RPFR File, Tab 1 at 6‑13; RID at 6-8. The appellant argues that these issues already were affirmed by the Board's earlier Opinion and Order and that relitigating them now contravenes the law-of-the-case doctrine. RPFR File, Tab 3 at 14-18.

¶16 The law-of-the-case doctrine limits relitigating an issue that already was decided in a different stage of the same litigation. *Nease v. Department of the Army*, 103 M.S.P.R. 118, ¶ 10 (2006). Under this doctrine, the Board generally will not reconsider an issue it already decided in a prior proceeding unless an exception exists, such as the availability of new and substantially different evidence, a contrary decision of law by a controlling authority that applies to the question at issue, or a showing that the prior decision in the same appeal was clearly erroneous and would work a manifest injustice. *See Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 24 (2008).

¶17 Here, the Board affirmed the administrative judge's earlier findings of fact, as set forth above, regarding the agency's response once it learned of the appellant's alleged misconduct. The agency has not identified any basis to find that an exception to the law-of-the-case doctrine applies. Therefore, insofar as

the agency seeks to reargue these findings of fact, we invoke the law-of-the-case doctrine and decline to reconsider our prior findings. *See Seas v. U.S. Postal Service*, 78 M.S.P.R. 569, 573 (1998) (invoking the law-of-the-case doctrine and declining to reconsider prior findings the Board made regarding the merits of the agency's charges).

¶18    However, the administrative judge determined for the first time on remand that the factual findings regarding the agency's response indicated a "rush to judgment." RID at 6-7. As the Board previously did not affirm this finding, the law-of-the-case doctrine does not apply. Nonetheless, we agree with the administrative judge's determination that these agency actions reflect a rush to judgment.

¶19    Although the Board affirmed the administrative judge's finding that the deciding official lacked an understanding of the evidence supporting the demotion action, it did not expressly affirm the administrative judge's finding that the deciding official had no familiarity with the evidentiary record. *Shibuya*, 119 M.S.P.R. 537, ¶ 33. Therefore, the law-of-the-case doctrine does not apply to this particular finding. However, we find that the fact that the deciding official lacked an understanding of the evidence weighs against the agency and warrants the same result as if the deciding official had no familiarity with the evidentiary record.

¶20    In the remand initial decision, the administrative judge also reiterated her prior finding that the agency largely ignored evidence relevant to the severity of the appellant's misconduct as it was moving forward with disciplinary action, as evidenced by the following factors:

> No one in the agency expressed contemporaneous concerns about the appellant's solicitation of record destruction; some of the solicitations predated any specific agency rule forbidding them; the appellant was unaware of the impropriety of the solicitations; the appellant stopped the solicitations as soon as he was ordered to do so; the appellant's improper arrangement with [the outside attorney]

was of limited scope; and the appellant's conduct was based on the [outside attorney's] advice.

RID at 7 (internal citations omitted). The agency does not challenge this finding on review, RPFR File, Tab 1, and we discern no basis to disturb it.

¶21    In sum, we agree with the administrative judge's finding that the agency's response once it learned of the appellant's misconduct and its handling of the disciplinary action undermine the strength of the evidence in support of the demotion. Therefore, we find that the first *Carr* factor does not weigh in favor of the agency.

The administrative judge properly determined that the proposing and deciding officials had a strong motive to retaliate against the appellant.

¶22    Regarding the second *Carr* factor, the administrative judge found that the proposing official had a strong motive to retaliate against the appellant because she was upset with the appellant's decision to make the disclosure to OSC and viewed the appellant as acting self-righteously and outside the chain of command. RID at 8. The administrative judge also found it appropriate to impute the proposing official's strong motive to retaliate to the deciding official. *Id.*

¶23    On review, the agency argues that the administrative judge erred in finding that the proposing and deciding officials held a "strong motive" to retaliate because they were not implicated by the appellant's disclosures or involved in the matters disclosed. RPFR File, Tab 1 at 11, 14. However, it is not necessary that an agency official be directly implicated or harmed by an appellant's disclosures to establish a substantial retaliatory motive when, as here, the disclosures reflect poorly on the agency and, by implication, on the management officials. *See Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (explaining that those responsible for the agency's overall performance may well be motivated to retaliate, even if they are not directly implicated by the disclosures, as the criticism reflects on them in their capacities as managers and employees); *Whitmore*, 680 F.3d at 1370-71 (finding that the appellant's

criticisms cast the agency and, by implication, all of the responsible officials, in a highly critical light by calling into question the propriety and honesty of their official conduct); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 69 (2011) (finding motive to retaliate because the appellant's disclosures reflected on the responsible agency officials as representatives of the general institutional interests of the agency). Here, the appellant's protected disclosure resulted in agency and OIG investigations that were highly critical of the agency's response to allegations of financial misconduct by a member of the agency's Senior Executive Service (SES). RID at 8; 0295 W-2 AF, Tab 18, Subtab B. Moreover, the Board previously found that the proposing and deciding officials knew of the appellant's disclosures before they proposed and sustained, respectively, the appellant's demotion. *Shibuya*, 119 M.S.P.R. 537, ¶ 23. Therefore, we find that both the proposing official and the deciding official, as members of the SES, had a substantial motive to retaliate because the appellant's disclosure, which reflected poorly on the agency in general, reflected on them as well. *See Whitmore*, 680 F.3d at 1370-71.

¶24        The agency also argues that, contrary to the administrative judge's finding, the proposing official was not upset with the appellant's disclosure to OSC. RPFR File, Tab 1 at 7-10. However, the Board previously affirmed the administrative judge's finding that the proposing official admitted to her disapproval of and distress over the appellant's whistleblowing activity, *Shibuya*, 119 M.S.P.R. 537, ¶¶ 35-36, and we decline to reconsider this issue now pursuant to the law-of-the-case doctrine. *See Seas*, 78 M.S.P.R. at 573. In addition, we agree with the administrative judge's determination that the proposing official's handling of the proposed demotion demonstrated a "rush to judgment" because she did not review the evidentiary package supporting the proposed demotion and failed to order a customary case analysis for the matter. RID at 6. In light of the foregoing, we find no basis to disturb the administrative judge's determination that the proposing official had a strong motive to retaliate against the appellant.

¶25     The agency next argues that the administrative judge erred in finding that the proposing official's retaliatory motive could be imputed to the deciding official because the deciding official testified that he never had any conversations with the proposing official about the appellant's disclosure. RPFR File, Tab 1 at 14-15. Because Federal employees generally must rely on circumstantial evidence to prove a motive to retaliate, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision. *Whitmore*, 680 F.3d at 1371. For example, a "proposing official's strong motive to retaliate may be imputed to a deciding official" in some circumstances. *Id.* (citing *Chambers*, 116 M.S.P.R. 17, ¶ 58). Here, given that the deciding official sustained the proposed demotion without understanding the evidence supporting the demotion, *Shibuya*, 119 M.S.P.R. 537, ¶ 33, we agree with the administrative judge's decision that it was appropriate to impute the proposing official's motive to retaliate to the deciding official. RID at 8.

The administrative judge correctly determined that agency failed to show that it took similar actions against similarly situated nonwhistleblowers, but we modify the initial decision to find that the CFO was not similarly situated to the appellant.

¶26     In the remand initial decision, the administrative judge found that the agency failed to show that it took similar actions against similarly situated nonwhistleblowers and that, to the contrary, it treated the CFO, a nonwhistleblower, less harshly than it treated the appellant. RID at 8-9.

¶27     On review, the agency argues that the administrative judge erred in finding that the CFO was similarly situated to the appellant because their alleged misconduct and other circumstances regarding their employment were not similar. RPFR File, Tab 1 at 15-17. Specifically, the agency asserts that the CFO was a SES‑level employee, stationed in Texas, while the appellant occupied a GS-14 human resources position and was stationed in New Mexico. *Id.* at 16. The

agency further asserts that the CFO was accused of improperly charging rental car costs to the Federal Government and the investigation into his misconduct was handled at the agency level, while the appellant was accused of two counts of poor judgment and the investigation was handled by the Forest Service at the direction of the agency's Office of the General Counsel. *Id.* The agency also contends that the two are not similarly situated because the appellant was demoted, while the CFO was removed. *Id.*

¶28 The appellant argues that the Board already has affirmed the administrative judge's finding that the CFO was similarly situated to the appellant and that the comparison is useful to show that the agency treated the CFO, a nonwhistleblower, less harshly than it treated the appellant by awarding him a performance award and a salary increase after the alleged misconduct and by not expeditiously conducting an investigation after learning about his alleged misconduct. RPFR File, Tab 3 at 21-23.

¶29 As an initial matter, the Board previously affirmed the administrative judge's finding that the agency treated the CFO, a nonwhistleblower, less harshly than it treated the appellant. *Shibuya*, 119 M.S.P.R. 537, ¶¶ 34, 36. However, the Board did not make any finding as to whether the CFO was similarly situated to the appellant. *Id.* Therefore, the law-of-the-case doctrine does not apply to the issue of whether the CFO was similarly situated to the appellant. *See Nease*, 103 M.S.P.R. 118, ¶ 10.

¶30 For an employee to be considered similarly situated to an appellant who is disciplined, his conduct and the surrounding circumstances must be similar. *Carr*, 185 F.3d at 1326. Our reviewing court has emphasized, however, that comparison employees must be *similarly* situated to the appellant, "not *identically* situated." *Whitmore*, 680 F.3d at 1373 (emphasis added). "[T]he requisite degree of similarity between employees cannot be construed so narrowly that the only evidence helpful to the inquiry is completely disregarded." *Id.* "Differences in

kinds and degrees of conduct" should be considered in evaluating the evidence regarding *Carr* factor three. *Id.*

¶31    Here, notwithstanding the broad interpretation of "similarly situated" in this context, we find that the CFO is not similarly situated to the appellant. As noted by the agency, the CFO and the appellant did not engage in similar conduct, did not occupy similar positions, and did not work in the same state, and different departments handled the investigations into their misconduct. 0295 W-2 AF, Tab 18, Subtab B, Tab 24. The appellant has not shown any similarities between the two individuals, and we discern no basis to conclude that they are similarly situated for the purpose of a *Carr*-factor analysis simply because they both worked for the Forest Service and were both investigated for misconduct at around the same time. Accordingly, we modify the remand initial decision to find that the CFO was not similarly situated to the appellant. Nonetheless, when, as here, the agency fails to present evidence showing that it has treated similarly situated nonwhistleblowers in a similar manner, the absence of such evidence may weigh against the agency. *Whitmore*, 680 F.3d at 1374-75. Therefore, we find that *Carr* factor three still weighs against the agency.

The administrative judge correctly determined that the agency failed to show by clear and convincing evidence that it would have demoted the appellant absent his protected disclosure.

¶32    The agency argues that, contrary to the administrative judge's determination, it established by clear and convincing evidence that it would have demoted the appellant absent his protected disclosure because his misconduct was egregious and serious. RPFR File, Tab 1 at 17-23. As discussed above, however, we find no basis to disturb the administrative judge's determination that the strength of the agency's evidence in support of the demotion action was undermined by the surrounding circumstances. Further, we have affirmed the administrative judge's finding that both the proposing and deciding officials had a strong motive to retaliate against the appellant. Regarding the third *Carr* factor,

we find that the agency's failure to present evidence as to its treatment of similarly situated nonwhistleblowers tends to weigh against it.

¶33     Weighing the *Carr* factors, the administrative judge concluded that, even though the agency proved the charges, it failed to show by clear and convincing evidence that it would have demoted the appellant in the absence of his protected disclosure.  RID at 9.  The agency's arguments on review provide no basis to disturb this well-reasoned finding.  *See Crosby*, 74 M.S.P.R. at 105‑06.  Therefore, we agree with the administrative judge's finding that the appellant proved his affirmative defense of whistleblower reprisal and that the demotion action must be reversed.

## ORDER

¶34     We ORDER the agency to cancel the appellant's demotion, restore him to the GS-201-14 Supervisory Human Resource Specialist position (Branch Chief, Human Resources and Labor Relations) effective June 6, 2010, and to place the appellant as nearly as possible in the position to the situation he would have been in absent the agency's retaliatory actions at issue in the IRA appeals.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984); 5 U.S.C. § 1221(g)(1).  The agency must complete this action no later than 20 days after the date of this decision.

¶35     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶36        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶37        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶38        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60‑day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.

You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT**
**REGARDING YOUR RIGHT TO REQUEST**
**CONSEQUENTIAL DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for consequential damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.



| | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |
|---|---|

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2.      The following information must be included on AD-343 for Restoration:
   a.      Employee name and social security number.
   b.      Detailed explanation of request.
   c.      Valid agency accounting.
   d.      Authorized signature (Table 63).
   e.      If interest is to be included.
   f.      Check mailing address.
   g.      Indicate if case is prior to conversion.  Computations must be attached.
   h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1‑7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.      Must provide same data as in 2, a-g above.
   b.      Prior to conversion computation must be provided.
   c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.